Ludlow *against* the Columbian Insurance Company.

NEW-YORK,
May, 1806.

Ludlow
v.
Columbian In-
surance Comp.

THIS was an action on a policy of insurance, dated the 18th of January 1804, on goods valued at 860 dollars, on a voyage from *New-York* to *Newbern*, in *North Carolina*, on board the vessel called the *Nantasket*.

The loss was thus stated in the declaration ; " that the said vessel, on the 1st of *February*, 1804, when on her voyage, was, by and through the force and violence of the winds and waves and currents, and by the perils and dangers of the seas, forced and driven upon and against certain shoals and reefs, and by means thereof, the said goods laden on board of the said schooner, were then and there wetted, damaged and wholly spoiled, and became totally lost." &c.

The cause was tried at the *New-York sittings*, on the 4th of *January* 1806, before Mr. Justice LIVINGSTON.

The policy, abandonment, and interest were proved.— The vessel sailed from *New-York*, on the 20th of *January*, 1804, on her voyage to *Newbern*, and arrived off *Occacoke Bar*, on the afternoon of the 31st of *January*. A signal was made for a pilot, to conduct the vessel over the Bar, which lies near the mouth of the inlet.

In the morning of the next day, a pilot came on board, who conducted the vessel over the bar, where, on account of the darkness of the night, they came to anchor. The anchor fouled, and dragged, and the vessel was driven by the violence of the wind and current on the reef, from which, by cutting the cable, she was got off, and was driven on the beach at *Occacoke* point. In drifting over the reef, the vessel lost her rudder and boat, and a great part of her sheathing. The master went to *Shell-Castle*, about six miles distance, to gain assistance and advice, and applied to the deputy Marshall of the District, of the name of *Wallace*, who refused, on account of the situation of the vessel, and state of the weather at that time, to furnish ligh-

*Insurance on goods from New-York to Newbern in N. Carolina. The vessel stranded on Occacoke beach. Not being able to get her off immediately, the master with the advice of persons there concluded to break up the voyage. Two days after, the goods were landed, and ten days thereafter, sold at public auction. The consignees bought the goods ; and the vessel having been got off, proceeded with the goods to Newbern. They were not opened, but were sold by the package, and though one box appeared to be injured, there was no evidence of the extent of the damage. It was held, that the insured had no right to abandon for a total loss. To justify an abandonment in case of stranding, the goods must be deteriorated to half their value. The insured, in*

this case were bound to send the goods to their place of destination, as the accident happened at the mouth of the harbour, and lighters might have been obtained to transport the goods.

NEW-YORK, ters to take the goods out of her. After many ineffectual
May, 1806. attempts to get the schooner off, the master, with the best
Ludlow advice he could obtain from the persons there, had the cargo
v. unladen, on the second day of *February*, and advertised
Columbian In-
surance Comp. for sale at public auction, for the benefit of all concerned.
The schooner was about fifty tons burthen, and when the
goods were unladen, she had several feet of water in her
hold, occasioned principally by the surf breaking over her as
she lay. The master, after the first day, did not apply for
lighters, nor endeavour to obtain another vessel to carry
the goods to *Newbern*, though lighters might have been
obtained. The vessel belonged to *Dewey* and *Stow*, who
were also the *consignees* of the goods. *Stow* was on board
of the vessel, and *Dewey* came from *Newbern* to *Occacoke*,
and gave directions as to the sale of the vessel and
cargo, which took place, at public auction, on the 13th of
*February*. *Dewey* and *Stow*, the owners of the vessel,
attended and purchased most of the goods. One box was
opened, and appeared wet, but the goods were not taken
out, or examined, but were all sold by the package, with-
out inspection. In consequence of a favourable wind, and
high tide, the vessel was got off, and the goods purchased
at auction, were put on board and carried to *Newbern*.—
*Occacoke* is about 80 miles from *Newbern*; about six miles
from *Portsmouth*, and the same distance from *Shell-Castle*.
The vessel, in going up to *Newbern* leaked, but was easi-
ly kept free by the pumps, and the cargo was not damaged.
It appeared to be the practice to sell the cargoes of strand-
ed vessels on the beach at *Occacoke*. Lighters may be
obtained, at regular prices, at *Portsmouth* and *Shell-Cas-
tle*, to carry goods to *Newbern*, or to other places in the
vicinity.

The jury, after going from the bar, returned into court,
and asked the judge whether, if *Dewey* acted with good
faith, but mistook the law, respecting his obligation to car-
ry the goods to *Newbern*, after the accident, the defendants
were liable. The judge said, that if the jury believed that
*Dewey* acted with good faith, they ought to find for the
plaintiff.

NEW-YORK,.
May, 1806.

Ludlow
v.
Columbian In-
surance Comp.

The jury found a verdict for the plaintiff, for 871 dol-lars and 83 cents.

A motion was now made to set aside the verdict and for a new trial.

*Bogert*, for the defendants. The declaration avers a total loss of the goods, by their being wet and spoiled ; but the evidence does not support this averment. On the trial, the plaintiff gave no evidence whatever of a loss by sea-damage, but attempted merely to prove that the vessel was *stranded*, and *incapable* of transporting the goods to their place of destination. If it were intended to recover for a total loss, occasioned by sea-damage, it should have been proved that it amounted to more than 50 per cent of the value of the goods. The cause of loss must be stated according to the truth of the case, and the party must support his averment by correspondent proofs.†

Mere stranding is not a sufficient ground to recover as for a total loss of cargo. It must be followed by a ship-wreck, or the vessel be wholly disabled from proceeding on her voyage, before the insured can have right to abandon.§ Nor, if the goods be safe, can the assured abandon unless it is impracticable to carry them to their place of destination. It is the duty of the assured to find another vessel, if one can be obtained in a reasonable time.‖ In the present case the vessel was stranded at the mouth of the river, on which the very port of destination lay, at a short distance inland ; and lighters were easily to be procured to carry the goods to *Newbern*. The vessel, in fact, a few days after the accident, was got off, and did proceed to her port of destination, in a fit condition to carry the goods.

The goods laid eleven days without any survey of them having been made ; and were, afterwards, purchased at auction by the *consignee*, and sent in the same vessel to *Newbern*. The proceedings relative to the sale show a great want of good-faith ; and an attempt to recover of the defendants, under such circumstances of suspicion, and gross mismanagement, ought not to be countenanced.

† *Marshall*, 593, 594. *Park*, 62, 63.

§ *Marshall*, 416, 502.

‖ *Marshall*, 378, 499, 502, 505, 506.

NEW-YORK,    *The Court* stopped *Bogert*, and desired the counsel for
May, 1806.   the plaintiff to begin.

Ludlow          *Hopkins* and *Brinckerhoff*. The averment of the loss, is
v.           made in the usual manner, where it arises in consequence of
Columbian In-
surance Comp.  *stranding*.† Where a total loss is averred, you may recov-
             er for a partial loss ; and in cases of stranding you may re-
† *Marshall*,
595, 719, *Park*,  cover for a partial loss. The declaration states that the
398.         goods were wet, and there is proof that some were wet ;
             and in this view the extent of damage is immaterial. The
‖ *Marshall*,   declaration and proofs do not vary.‖ The insured may a-
593. *Park*, 62.  bandon whenever any of the losses or perils mentioned in
§ *Marshall*,   the policy happen.§ He is bound to make his election with-
482.
* *Marshall*,   out delay, and to give notice to the insurer.* When the
510.         abandonment is once made, the property remains afterwards
             at the risk of the insurers, and the master and consignee
† 2 *Caines*, 284,  are considered as their agents.† It is not always easy to de-
*United Insur.*
*Com.* v. *Robin-*  termine when *stranding* is such a loss as will justify an
*son & Harts-*
*horne,* affirmed  abandonment.
in error,
*March,* 1806.   [LIVINGSTON, J. There can be no doubt, if the goods,
             *in consequence* of stranding, be deteriorated to more than
             half their value, that the insured may abandon.]

             *Stranding*, with some loss or damage, is a cause for a-
             bandonment.¶ The mere innavigability of the vessel is not
¶ 2 *Emerigon*,  always a ground of abandonment ; but *shipwreck* is so,
187, 188.    though in fact, there is no loss of the goods. In this case,
             the innavigability arising from the stranding, and attended
             with some damage, is equivalent to a shipwreck, and af-
             fords an equally just cause for abandoning the property.

             Whatever the master does, *bona fide*, though he mistake,
§ *Marshall*,   is binding on the underwriters.§ If all the facts be duly
408, 410.    examined, it will appear that every thing in this case has
             been done with good faith, and that there is no ground for
             the imputation of fraud. In regard to the stranding, or ac-
             cident itself, no fraud is pretended. The determination to
             break up the voyage, on that event, was made, after a
             deliberate consultation with the most respectable people at
             the place, and pursuant to their advice. If the opinion
             thus formed was incorrect in point of law, still it ought to

be binding.   Efforts were made without effect to get the
vessel off.   It was necessary to decide speedily, without
waiting for the possible result.   The proceedings relative to
the sale of the property, were conducted according to the
uniform usage and custom of the place, in similar cases.   It
was made at the usual place, after a public notification of
ten days, and under the direction of a public officer of the
district; the goods were sold to the highest bidder.   Sell-
ing goods by invoice, or package, is a customary mode.

NEW-YORK,
May, 1806.

Ludlow
v.
Columbian In-
surance Comp.

[SPENCER, J.   The goods having been sold to the *con-
signee*, can they be considered as purchased by him in any
other character than that of *consignee*, and for the use
of the *consignor ?*]

That the owners, or consignees purchased the goods, af-
fords no objection.   There is no principle of policy nor rea-
son that prevents the consignee from bidding at a public auc-
tion.   It was beneficial to all persons interested, as it tend-
ed to raise the price.   As the continuation of the voyage
depended on the condition of the vessel, not on that of the
goods, it was unnecessary to open them, before the day of
sale.   It was better to sell them by the package, than by the
piece.   In short, there is nothing, in the whole course of
the business, but what was usual, proper, and most for the
interest of those concerned.

*Per Curiam.*   There was not sufficient proof in this case
of a loss or deterioration of the goods to more than half
their value, in order to entitle the plaintiff to recover for a
total loss.   The only evidence of any loss or damage, is the
result of the sale of the goods at *Occacoke*, which ought
not to be the criterion ; since it was made without any pre-
vious survey of the goods, or any inspection or disclosure
whatever, of the extent of the damage.   Yet the consignee
was present, and the goods were in safe keeping twelve
days before the sale, so that they might have been thorough-
ly examined.   The case is not free from suspicion of fraud,
arising from the conduct of the consignee in forcing the
sale of the goods, and becoming the purchaser of a great
part of them, at an enormous discount.   If it be alleged

NEW-YORK, that the loss was total in a technical sense, from the inabili-
May, 1806. ty of the vessel to transport the goods to *Newbern*, the
Waring   contrary is proved, for, it appears that the consignee, who
v.       was the purchaser, had the goods transported, immediately
Warren.  after the sale, to *Newbern*, without any difficulty, where he
sold them for his own benefit, but for how much, does not
appear.   Carrying goods from the beach up to *Newbern*,
by lighters, does not appear to be unusual or improper,
and *Occacoke* bar may be considered as the mouth of the
harbour.   We are clearly of opinion that the plaintiff has
not made out a case of total loss, and that the verdict must
be set aside with costs to abide the event of the suit.

New trial granted.